Yes, good morning, Your Honor. Stephen Lubliner on behalf of Appellant Adrian Cida. Just as a housekeeping matter, since things sometimes fall through the cracks, I did want to confirm the Court is not inclining to expand the COA to add the ineffective assistance of counsel claim. Well, we haven't yet. Okay, thank you very much. So I will proceed to the certified issue, the Brady claim, where the issue, I guess, on which reasonable jurists can disagree is materiality or prejudice in the context of this rather long and cumbersome case. I think it is bordering on absurd to say that the gang evidence photo, the photo of the gang signs, the circumstances under which it were taken, and the credibility, most importantly, of the taker are not relevant in this case. You're talking about Montoya? Yes, Your Honor. I recognize... Don't keep us in the dark. You know, I think I know what you're talking about. Oh, yeah. We're talking... You say the taker and... Oh, I'm sorry. We're talking about Officer Montoya, who was the subject of a Rampart investigation, which had not been disclosed at the time of this testimony. Now, I recognize that Mr. Cida did raise a contrary argument that the gang evidence was irrelevant, collateral, and highly inflammatory, violated due process, and should have been excluded. The State vigorously opposed that, and every court to date has adopted the State's position from the trial court at trial at the motion for new trial on appeal in the district court that the gang evidence was relevant for the reasons that I state in the opening brief to buttress Simon's identification of Mr. Cida at the market. The chain of reasoning being that if Mr. Cida, contrary to what his girlfriend said, had been a gang member in May of the summer of 97, it made it somewhat more likely that he was still a gang member in December of 97, made it somewhat more likely that he would have been associating with another gang member at the market, the man who flashed the gang signs and who said this here is 18th, made it somewhat... Excuse me, Your Honor. Yes, Your Honor. The State says that there was a lot of evidence of his gang membership, not just the photo. Is that incorrect? So the information that he has been associated with gangs was already admissible or admitted? Well, I think it had been established that at some point, certainly at some point in his history, Mr. Cida had been an associate or a member of the 18th Street Gang. He had apparently all the relevant tattoos on his body and so on. But in terms of when he was actually validated, that had been, I think, substantially in the past in terms of when the crime had occurred. And his girlfriend had testified that it was her belief that he had stopped associating with those people when he had gotten together. I'm a little confused. I thought the certified issue was the Brady issue. That is the Brady issue. So what I came and prepared to learn about was why it mattered, why it would have affected the outcome, that the policeman was being investigated in this rampart investigation and the prosecution didn't disclose that. Well, it prevented the defense from impeaching Officer Montoya's credibility. How would you have done that? I don't understand how that would have happened. Well, in terms of Officer Montoya, isn't it a fact that you're under investigation in a rampart case? Is that the question that would have been asked? Well, I think part of what happened at the motion for new trial is that trial counsel asked for continuance to obtain further discovery. So I think there is probably somewhat problematic in terms of admitting evidence of an investigation. We know from, I think, subsequent proffers and from the State's supplemental excerpts of record here that the State, the Justice Department attempted to cooperate in Brady disclosures and there was a proffer to report to counsel. Let's assume there was a violation. They should have let you know that there's this investigation going on and the policeman who's testifying in your case is the subject of it. And they should have done it and they didn't do it and it's wrong. Still, under Zuno R.C. and a whole lot of other cases, you have to show some, I can't remember the precise formula, but some likelihood that the outcome would have been different. I still don't understand it. Yeah, you would have had one more little bit of impeachment. Doesn't look like it amounts to much. Well, I think you would have had. It's not even much impeachment because the guy's just under investigation. Well, you would have had a basis, excuse me, on which the jury could have disbelieved Mr. Officer Montoya's entire testimony. Disbelieved what part of it? That the, everything that he testified to, that he, that the encounter between him and the men on the street. Let's say they do. Let's say they say, well, we know he hasn't been convicted of anything or found guilty of anything, but let's just leave Montoya out of it. If something comes solely from Montoya, we're going to disregard it. So what? How would that change the case? It would have changed it because the jury would have been more likely to disbelieve the evidence that he was still a gang member. Didn't his girlfriend authenticate the photo? Yes, that's his picture, and yes, it looks like it's after. Well, I mean, yes, Your Honor, there's no dispute that it's a photo of Mr. Cedar. There's no dispute that he and everybody in the picture are flashing gang signs. So what does that have to do with Montoya? The problem is that in the hearing on the motion for new trial, Mr. Cedar was telling counsel that everything Montoya said was true, that it wasn't a consensual encounter. So if the jury disbelieved, it doesn't matter that the girlfriend said, yes, that's Mr. Cedar. We concede that's Mr. Cedar. We concede the photo shows what it shows. The question is, was it taken pursuant to a consensual encounter? I don't understand what that has to do with anything. Are you making some kind of a sideways Fourth Amendment argument? It's not a Fourth Amendment. So it's consensual or it's not consensual? It's not a Fourth Amendment argument. What difference does that make? Let's assume that it's not consensual. What difference does that make to the evidence that the photograph presented to the finder? Well, if it's not, if Officer Montoya's version, hi, fellas, what gang do you claim, and they all spontaneously flashed the 18th Street gang signs, is not true, and that entire setup was coerced as Mr. Cedar was proffering at the motion for new trial, then the photo is of no value to prove that Mr. Cedar was still a gang member. How was it coerced? What does the photo show? The photo shows Mr. Cedar and a couple of other friends flashing 18th Street gang signs and looking innocent. So I don't understand. Explain to me that, how does the coercion affect that and make that unreliable information? Well, the question is, was Mr. Cedar or was he not still a member of the 18th Street gang in the summer and inferentially in December? How could Officer Montoya coerce that behavior that a photograph was taken of? Well, he's a police officer. Police officers are able to coerce people into, you know, doing all sorts of things. Mr. Cedar had a Mr. Cedar was on probation at the time. You know, the record is not as well-developed. Well, do you mean he pointed a gun at him and said, flash some gang signs or I'm going to shoot you? I mean, what do you mean coerce? Well, he was investigated for being investigated for covering up. If you don't flash gang signs, I'm going to arrest you. I mean, is that what you're getting at? Well, he was being investigated for improperly rousting people. Look, it looks like it's just an appeal to the jury, a theoretical appeal to the jury, to look at the newspaper headlines. Rampart, big scandal. I'm still trying to figure out. So it all comes in. It's all properly disclosed. It all comes in. Was there any evidence that the policeman, assuming he was a dirty cop, I don't know, did fake something up here? At trial, there was no evidence that he faked something up. Officer Montoyer testified. Is there any kind of proffer before us, anything in the record that suggests he did? I think the closest thing that suggests that he did was submitted to Mr. Cedar's appellate counsel as part of the Justice Department's investigation for Brady purposes, suggesting that Officer Montoyer had covered up certain matters. Cedar could have filed an affidavit or testified or done something saying, yeah, that's me in the picture, but that's not the way I am. The only reason I flashed the gang signs is some kind of coercion such as Judge Trott described or something like that. Well, that was the proffer at the hearing for motions for new trial. I don't think it's fair to say Mr. Cedar, to preserve this issue, Mr. Cedar had to testify at trial and take the stand in his defense, where we know he would have been impeached by his prior burglary conviction. I don't think that's the answer to saying that Mr. Cedar was denied his Brady rights to impeach Officer Montoyer's testimony, just because he could have gotten up on the stand and said the same thing, certainly much less effectively than if there had been proper impeachment of a prosecutor. I kind of thought the girlfriend sunk Cedar and the policeman didn't even matter. I don't think she sank him. She told a story about where they were at the relevant time. Nothing like a fake alibi. Well, she told a story. There's a lot more than that. There's her story about where they were at the time. There is the testimony of, well, it's basically the testimony of the police officer about the informant's knowledge that other people on the street had admitted committing this crime in a way that sounds credible and plausible. Excuse me. The State says that the evidence of his investigation, Montoyer's investigation, would not have been admissible under State law, citing People v. Wheeler and other cases. Is that correct? I think probably simply a plain and simple investigation or allegations of misconduct probably would not be admissible as evidence of moral turpitude. I don't think there's any question that the things that were being alleged against the That's why trial counsel wanted a continuance to develop the record further. The Court denied the continuance. The Court denied further discovery. The Court said it doesn't matter. Yes, of course, the gang evidence is relevant, relevant, relevant for the reasons that we state in the brief. But Officer Montoyer's credibility somehow doesn't matter. What about Officer Ramos? What did he have to contribute? Officer Ramos testified, I believe, mostly about the interviews and the photo shows. And he also described Mr. Sita's gang tattoos. I don't think he formally qualified as a gang expert, but it's sort of Didn't he give his opinion after having been qualified that Ramos was a member of the gang? He did. I think he did venture that opinion that he had been. He didn't qualify it as to time, as I recall. The problem is you add that to the girlfriend's testimony. It begins to add up. Well, we're not disputing that he had been an 18th Street member of the 18th Street gang, that he, you know, if you just were to look at him, perhaps at the time of trial, you would see all these indicia of membership. But the defense evidence from the girlfriend was that he had abandoned all that. Prosecution theory was no, he hadn't, which makes it more likely that Simon was accurate in his identification of what happened at the market. Thank you, counsel. Thank you, Your Honor. Good morning. Deputy Attorney General J. Michael Landon on behalf of the Royal Respondent. Just quickly to emphasize a few things. We are, after all, talking about a rebuttal witness who had no role in the investigation, the arrest, anything of that sort. His sole role was to identify this photograph, which, as has been indicated earlier, Kathy Aguirre also authenticated it. There was no indication at trial of any objection as to the authentication of it. And just to hit a few points quickly, the proffer at trial was not that the petitioner was coerced into making a gang sign, which is what I understand the argument to be presently. The proffer at trial was this. Montoya says it was a consensual stop, i.e., we're walking down the street. I identify myself in my home voice and say, hey, Montoya, how are you? Petitioner says, petitioner was on probation at the time for a burglary. Part of the conditions was, in addition to a search condition, it was that he not associate with other 18th Street gang members. He was. Petitioner's proffer at trial, the motion for a new trial, was as follows. Montoya stops me. He says, in essence, are you on probation? It wasn't consensual. He threatened to take me in. At no point did he ever say, make a gang sign or I'm going to arrest you. At no point did he ever threaten that I needed to claim 18th Street. Further, as far as the gang membership, just so we're clear what we're talking about as far as tattoos, it's D.C. Ocho all across the chest, Hoover 18 Locos all the way down the forearm, XV318 right here. There simply was no doubt Petitioner was an 18th Street member at the time of trial. Further, the relevance is not simply the gang. So I guess even without Montoya, the jury. Well, without it. Well, without it. The fellows involved with gangs or. Well, again. They would have thought he was involved with the Kabbalah. Well, Hoover 18 Locos right here might have convinced you otherwise if you were a juror. But the point is not simply that he claimed 18th Street. It was that he was associating with 18th Street gang members. Petitioner even now doesn't dispute that. He's only disputing whether he was forced or his claim is he was forced to make gang signs. Even if he, even if that were true, he doesn't, doesn't dispute that he was with three other 18th Street gang members. His trial counsel said it in the motion for new trial. Three other 18th Street gang members. Kathy Aguirre's testimony was that he was done with that life. He stopped associating with 18th Street gang members. Let me back up to the question that precedes that, the issue you're discussing, at least logically. I don't quite understand why a prosecutor would not disclose to a defense attorney that one of the police that might be used as a witness is being investigated in this scandal that's all over the newspapers. Sure. The short answer is D.D.A. Morris just didn't know. I'm sorry? The short answer is the prosecutor didn't know. The second answer is this, and we've indicated in the footnote, and I don't know offhand which one it is, that we're assuming what we're calling the first prong of Brady existed, that there was information that was suppressed by the government. In this case, by that I mean there was an investigation that was targeting Officer Montoya at the time of Officer Montoya's testimony. Because after all, we're talking about impeachment here, not exculpatory. The record is vague on that, and that's why we've gone ahead and simply assumed for the record's purpose. The record indicates this. Officer Montoya testified on September 15, 1999. We have a cover letter from the D.A.'s office regarding further discovery provided at the request of our office when this case was on direct appeal. That cover letter, and it's in our supplemental excerpt of records, the whole correspondence back and forth, indicates that Rafael Perez mentioned Officer Montoya at least September 8 in an interview. He did not make any accusations of wrongdoing against Officer Montoya in that interview. Perez being the one who kicked off the entire Rampart investigation? Yes, yes. Again, I think the record indicates Perez took a plea and the matter became public on the 15th or 16th. He had his second interview with the special prosecutors on the 17th. On that day, he accused Officer Montoya of an involvement in a bad shooting that I believe Perez had been the main actor in. As far as the record indicates, that's the first indication we have of a specific allegation against Montoya, which is, of course, two days after his testimony. However, I don't know, based on this record, whether LAPD was investigating Montoya because he was a crash detective and had been on cases with Perez and for that reason alone. So based on that, we're simply assuming the existence of the investigation. Crash-based community resources against street hoodlums. Yes, yes. He was a Rampart gang detective. So all that's a very roundabout way of answering your question, Judge Weinfeld. So what you're saying is at the relevant time, the DA didn't know, but of course that doesn't matter because under Brady, he has to find out what other government investigators know. That's right. But what you're saying is also that the government investigators really didn't quite have Montoya under investigation when Montoya testified. As far as we know. It's possible. It's possible that he was part of the investigation. The idea of not letting the pure heart of the DA exonerate people from Brady violations is that the police are smart fellows, too, and the DAs and the police can just have an understanding that the police don't give the DA the Brady evidence and the DA can be very pure hearted in court and say, I don't know a thing, and then can be pure hearted afterwards and say, I didn't know. Right. Right. That's right. I just, you asked the question. I wanted to make it clear that the DA himself did not know. It's not clear there was, in fact, an investigation of Officer Montoya at that time. Got it. But to go ahead and get to another point, I do want to make clear, and I grant you a tangential right. This is AEDPA and stuff? This is an AEDPA. So we just decide whether the state court was completely out in left field by saying that it didn't matter? Well, this was a reasonable application of Brady. That's right. As far as a continuance, at 1 ER 46, Petitioner's Trial Counsel specifically says he's not asking for continuance. And to get to Judge Trott's point about this being essentially a search and seizure argument, that is what the motion for new trial was. It was we have this investigation pursuant to Rampart. My client says this was not a consensual stop. The photograph is prudently illegal for that kind of behavior. Got to go. It's got to go. As the court pointed out, that wouldn't have mattered because he had a legitimate probation term, and he could have been arrested just based on the fact of being with 18th Street gang members. Again, Judge Acuda, as to your point about the investigation, the mere fact of the investigation obviously would not have come in. We also point out that any such issue as far as a bad shooting would have been collateral and would not have been admissible. As far as the materiality, this wouldn't even have been a materialistic piece of evidence, the photograph. It certainly wouldn't have been materialistic gang membership. It wouldn't even have been material as to the December 97 incident as to Simon Vega. Now, keep in mind, the incident December 97 involving Simon Vega and Petitioner Threatening, the young man, I believe it's eight months or seven months after the murder, occurred at a market two blocks from Petitioner's mother's home where he was arrested. It's also important to note Simon Vega did not indicate that both of the men at the market were involved in the murder. He only indicated he remembered Petitioner. He specifically said the other man was not involved in the murder. The other point to make, and again, we're talking a lot about whether Petitioner was in this gang, whether he was involved in any sort of 18th Street activity. The December 97 incident, Petitioner never claimed to be 18th Street. It was his partner, the person next to him who said, this is 18th Street, made a sign. All Petitioner did was said, oh, you're one of those kids at that day. You better not be talking shit. His partner then started making the signs. The point is, even if for some reason, somehow, Petitioner was not 18th Street at that point, he's still associating with the 18th Street gang members. Regardless of what happened as far as the Montoya photo, that's still a fact. And then finally, in light of all the evidence, it's clearly not material. Unless the Court has any questions. Roberts. Thank you, counsel. Thank you. Unless my colleagues have further questions. Cedar v. McGrath is submitted. We'll hear Rodriguez v. Terhune.
judges: Trott, Kleinfeld, Ikuta